UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 5:18-cr-00084-02 |
| | * | |
| | * | |
| VERSUS | * | 18 U.S.C. § 1349 |
| | * | |
| | * | CHIEF JUDGE HICKS |
| KIRBYJON H. CALDWELL (02) | * | MAGISTRATE JUDGE HORNSBY |

**FACTUAL BASIS FOR PLEA**

Comes now the United States of America, by and through the undersigned Assistant United States Attorneys, and Kirbyjon H. Caldwell, by and through his undersigned counsel, who respectfully offer this "Factual Basis for Plea." This document is submitted so that the district court can "determine that there is a factual basis for the plea," FED. R. CRIM. P. 11(b)(2), and does not purport to set out every facet of the conspiracy or every action taken by Caldwell or his coconspirators in furtherance thereof.

1. Defendant, Kirbyjon H. Caldwell, was the senior pastor of Windsor Village United Methodist Church in Houston, Texas. He had previously obtained a master's degree from the Wharton School of Business and worked in the financial industry. Caldwell was a member of LDT, LLC (LDT), a Wyoming limited-liability company.

2. Gregory Alan Smith held himself out as an investment advisor, operating through Greg Smith Financial Group, LLC in Shreveport, Louisiana.

3. "Historical Chinese Bonds" refer to bonds issued by the former Republic of China prior to 1949 and the Communist takeover. The current Chinese Government does not recognize the bonds; the Securities and Exchange Commission (SEC) considers them collectable memorabilia; and they have no value outside of the memorabilia market.

4. In the spring of 2013, Caldwell and Smith agreed that Smith would approach existing clients and acquaintances about an investment opportunity in Historical Chinese Bonds. Smith's usual pitch was that Caldwell was putting the deal together, that Caldwell had the bonds in his possession or was in the process of obtaining them, that Caldwell was brokering a deal to sell the bonds, that the individual would be obtaining a partial ownership interest in these bonds, and that the individual would receive exponential returns on his or her investment in a short period of time. None of the individuals were told that no previous investor had obtained the promised return on investment. If the individuals lacked the liquid assets to invest, Smith encouraged them to cash out annuities.

5. If the individual decided that he or she would invest, they were typically provided with a "participation agreement." That agreement, which was between Caldwell and the investor, generally set out the type of bond, the investor's partial ownership of the bonds in exchange for participation rights in their sale, and that, if the sale failed to occur within a set number of days, the investor could request a refund and the invested funds would be returned within a defined period of time.

6. The investors were advised to wire their investment funds from their financial institutions located in the Western District of Louisiana to one of three accounts held outside of the State of Louisiana: Caldwell's personal bank account; an account held by Caldwell's company, LDT, LLC; or an account controlled by Caldwell's attorney. In total, in 2013 and 2014, approximately $3.5 million was "invested" in these bond deals.

7. Once the funds were received, they were divided between Caldwell, Smith, and others. Caldwell personally received approximately $900,000. Caldwell used a portion of that money to pay down debt—personal loans, mortgages, and credit cards—and maintain his lifestyle, among other things. The investors were not told that their monies were being split between Caldwell, Smith, and others. Instead, they were told that their funds were used to purchase bonds and pay for expenses incurred from selling or redeeming the bonds.

8. As time passed and investors questioned why they had yet to receive the promised returns, Caldwell and Smith, through texts and emails, offered excuses as to why the deals had not yet closed, defended the legitimacy of the deals, and assured the investors that they would receive their promised returns. While at the outset Caldwell did not realize that the transactions involving Historical Chinese Bonds were not legitimate, Caldwell deliberately ignored repeated information received during the relevant time period that these transactions would not come to fruition. To date, no bond deal has closed; however, all investors have received at least a

partial refund of their initial investment from Caldwell. Some have been fully repaid by Caldwell.

Signed this 10th day of March, 2020.

DAVID C. JOSEPH
United States Attorney

KIRBYJON H. CALDWELL
Defendant

By: SETH D. REEG, # 34184
Assistant United States Attorney

KARIMA MALONEY
Attorney for the Defendant

By: C. MIGNONNE GRIFFING, #19601
Assistant United States Attorney